**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

CHRISTIAN D. SEARCY et al.,

      Plaintiffs,

v.                               CASE NO.  4:13cv664-RH/CAS

THE FLORIDA BAR et al.,

      Defendants.

_____/

## ORDER ON THE MERITS

This case presents a First Amendment challenge to two Florida Bar rules that govern attorney websites.  The case is here on cross-motions for summary judgment.  Both sides agree the case should be resolved based on the summary-judgment motions.

The first challenged rule, at least as interpreted by the Bar's Standing Committee on Advertising, requires any statement on an attorney's website to be "objectively verifiable."  The Standing Committee says a website thus cannot include a statement such as "tort reform benefits insurers."  The rule as so interpreted would obviously violate the First Amendment, but in this lawsuit the

Bar renounces any such interpretation.  The Bar has not, however, renounced

application of the rule to at least some truthful statements about an attorney's past

results.  Under controlling Eleventh Circuit authority, the plaintiffs' challenge to

this rule is not yet ripe.

The second rule prohibits a law firm from saying it specializes in, or has

expertise in, a given practice area, even if the statement is true.  The rule prohibits

an individual attorney from truthfully claiming to specialize or have expertise in an

area unless the attorney is board-certified in that area.  And because certification is

not available for some practice areas, the rule prohibits an attorney from claiming

to specialize or have expertise in those areas.  The challenge to this rule is ripe.

The rule, at least as applied to the plaintiffs' website, is unconstitutional.

I

The plaintiff Searcy Denney Scarola Barnhart & Shipley PA is a Florida law

firm that handles personal-injury cases.  The individual plaintiffs are the firm's five

named partners.  The firm has included on its website (a term used in this order to

include blogs and social-media materials), and wishes to continue to include on its

website, some statements that clearly do, and others that may, violate the

challenged rules, including, for example, a statement that tort reform benefits

insurers and a statement that Searcy Denney specializes in mass-tort and unsafe-

product cases.  As is undisputed, the firm has handled many mass-tort and unsafe-product cases.

The defendants are The Florida Bar and, in their official capacities, four Bar officers, including the executive director.

The plaintiffs challenge two rules that are part of the Rules Regulating The Florida Bar (sometimes cited in this order as "Florida Bar Rules").  Rule 4-7.13 prohibits "deceptive and inherently misleading" advertisements, defines that term, and, in Rule 4-7.13(b)(2), gives as a specific example of prohibited material "references to past results unless such information is objectively verifiable."  Rule 4-7.14(a)(4) prohibits "a statement that a lawyer is board certified, a specialist, an expert, or other variations of those terms," unless the lawyer has been certified under The Florida Bar's certification plan, another state's comparable plan, or another certification plan accredited by The Florida Bar or the American Bar Association.

The plaintiffs assert that the rules violate the First Amendment, both on their face and as applied.  They also initially asserted that Rule 4-7.13 is unconstitutionally vague.  An earlier order rejected the vagueness challenge on the merits.

II

The Bar has established a three-step procedure under which an attorney may obtain an opinion on whether a statement in an advertisement or on the attorney's website violates the rules.  The first step is review of the statement by the Bar's Ethics and Advertising Division.  The second step is review of the Ethics and Advertising Division's opinion by the Bar's Standing Committee on Advertising. The third step is review by the Bar's Board of Governors.

A favorable opinion at any step creates a "safe harbor"; an attorney cannot be disciplined based on a statement said to be permissible at any step.  But only the Board of Governors can establish the Bar's official policy.  Thus an opinion of the Ethics and Advertising Division or Standing Committee on Advertising, even when issued as a formal part of the review process, may establish a safe harbor but otherwise is not binding on the Bar or on the attorney.

When invoking this process, an attorney may submit discrete materials from a website but must not submit the entire website.  *See* Florida Bar Rule 4-7.19(d). In accordance with these procedures, Searcy Denney submitted 13 pages from its website (from the thousands of pages on the website as a whole), its LinkedIn profile page (which included a client's unsolicited, favorable comments), and materials from the firm's blog.

The Bar's Ethics and Advertising Division and the Bar's Standing Committee on Advertising provided rather remarkable responses, opining, for example, that Searcy Denney could not include on its website the following statements (deemed not to be objectively verifiable and thus to be forbidden): the days "when we could trust big corporations . . . are over"; "Government regulation of Corporate America's disregard of consumer safety has been lackadaisical at best"; and "when it comes to 'tort reform,' there is a single winner: the insurance industry."  In defense of this lawsuit, the Bar has backed away from these obviously unconstitutional positions; the Bar no longer asserts it can prohibit an attorney from making political statements like these.

The Ethics and Advertising Division and the Standing Committee on Advertising also said Searcy Denney could not say it has "32 years of experience handling mass tort cases, resulting in justice for clients in a wide variety of circumstances," or that it was "one of the few law firms in the country to successfully represent innocent victims of dangerous herbal supplements."  The theory was that "justice" and "successfully" are not objectively verifiable.  The Bar has not renounced these positions.

Searcy Denney could have obtained review by the entity that has authority to bind the Bar: the Board of Governors.  But Searcy Denney did not do so.  Instead, Searcy Denney and its named partners filed this lawsuit.

### III

The first issue is the extent to which the plaintiffs' challenge to these provisions is ripe for adjudication despite Searcy Denney's failure to obtain an opinion from the Board of Governors.  The law of the circuit on this issue is set out at length in *Harrell v. The Florida Bar*, 608 F.3d 1241, 1261 (11th Cir. 2010).  No purpose would be served by repeating here all that was said there.

*Harrell* establishes that a First Amendment challenge to a Bar rule may go forward on the merits when three things are all true.  First, the attorney has made statements, and unless prohibited from doing so will continue to make statements, that may violate the challenged rule.  Second, the attorney faces a credible threat of disciplinary action if the attorney continues to make the statements.  And third, nothing would be gained by requiring the attorney to obtain a more-definitive administrative interpretation of the rule, because the rule's application is clear on its face.  *Harrell*, 608 F.3d at 1261-62.

The opinions of the Bar's Ethics and Advertising Division and Standing Committee on Advertising are enough to show that the first two conditions are met.  The critical issue, then, is the third: whether application of the challenged rules to Searcy Denney's statements is clear on the face of the rules.  As set out below, this condition is not met for the first challenged rule (Rule 4-7.13) but *is* met for the second (Rule 4-7.14).

IV

Rule 4-7.13, provides in relevant part:

A lawyer may not engage in deceptive or inherently misleading advertising.

    (a) Deceptive and Inherently Misleading Advertisements. An advertisement is deceptive and inherently misleading if it:

        (1) contains a material statement that is factually or legally inaccurate;

        (2) omits information that is necessary to prevent the information supplied from being misleading; or

        (3) implies the existence of a material nonexistent fact.

    (b) Examples of Deceptive and Inherently Misleading Advertisements.  Deceptive or inherently misleading advertisements include, but are not limited to advertisements that contain:

        (1) statements or information that can reasonably be interpreted by a prospective client as a prediction or guaranty of success or specific results;

        (2) references to past results unless such information is *objectively verifiable*, subject to rule 4-7.14;

        (3) comparisons of lawyers or statements, words or phrases that characterize a lawyer's or law firm's skills, experience, reputation or record, unless such characterization is objectively verifiable.

Florida Bar Rule 4-7.13 (emphasis added).

On its face, the requirement that a statement be "objectively verifiable" applies only to statements about past results, not to every statement on a website or in other materials.  And on its face, the requirement that a statement about past results be "objectively verifiable" does not proscribe—or at least does not necessarily proscribe—a statement that an attorney has achieved justice or successfully represented clients.  Nor does the requirement, on its face, proscribe truthful statements about actual results obtained for clients.

The Bar has said in its official comment on the rule that statements about past results can be misleading.  And indeed they can.  An astute attorney once observed that the easiest way to get a million-dollar verdict is to have a five-million-dollar case and try it poorly.  So an attorney's statement that the attorney has obtained a million-dollar verdict does not necessarily show that the attorney handled the case well.  Still, a client faced with a choice between two attorneys might wish to know that one has obtained a million-dollar verdict in a case of the kind at issue and the other has never even tried such a case.  The solution to the Bar's concern is to provide potential clients more information, not less.  The Bar has fallen short of justifying a ban on truthful statements along these lines.

The difficulty for the plaintiffs in the current lawsuit, though, is that the rule does not explicitly prohibit such a statement.  Even the official comment says only that an attorney's claim to have "successfully" handled a case "*may or may not* be

sufficiently objectively verifiable."  Florida Bar Rule 4-7.13, Comment (emphasis added).  Searcy Denney can hardly be criticized for fearing the worst, based on the Bar's "long and undeniable trend towards increasingly restrictive measures to control attorney advertising," *Harrell*, 608 F.3d at 1248, the many inconsistent and sometimes indefensible positions the Bar has taken in other instances, *see id.* at 1255-56, and the opinions of the Bar's Ethics and Advertising Division and Standing Committee on Advertising in response to Searcy Denney's inquiry in this very case.  But until the Board of Governors interprets the rule in an unconstitutional manner, the challenge is premature.  That is the clear import of *Harrell*.

V

The result is different for Rule 4-7.14, which provides in relevant part:

> A lawyer may not engage in potentially misleading advertising.
>
> (a) Potentially Misleading Advertisements. Potentially misleading advertisements include, but are not limited to:
>
> . . . .
>
> (4) a statement that a lawyer is board certified, *a specialist, an expert, or other variations of those terms* unless:
>
> (A) the lawyer has been certified under the Florida Certification Plan as set forth in chapter 6, Rules Regulating the Florida Bar and the advertisement includes the area of certification and that The Florida Bar is the certifying organization;

(B) the lawyer has been certified by an organization whose specialty certification program has been accredited by the American Bar Association or The Florida Bar as provided elsewhere in these rules. A lawyer certified by a specialty certification program accredited by the American Bar Association but not The Florida Bar must include the statement "Not Certified as a Specialist by The Florida Bar" in reference to the specialization or certification. All such advertisements must include the area of certification and the name of the certifying organization; or

(C) the lawyer has been certified by another state bar if the state bar program grants certification on the basis of standards reasonably comparable to the standards of the Florida Certification Plan set forth in chapter 6 of these rules and the advertisement includes the area of certification and the name of the certifying organization.

Fla. Bar Rule 4-7.14 (emphasis added).

The application of this rule is clear: Searcy Denney cannot say it specializes or has expertise in mass-tort or unsafe-product cases, or even in personal-injury cases, even though the firm undeniably has expertise in these areas. Nor can any individual attorney claim to specialize or have expertise in mass-tort or unsafe-product cases, even if the attorney handles only cases of that kind, and even if the attorney has successfully handled many such cases. The challenge to this rule thus is ripe.

The controlling First Amendment standards have been set out in a series of decisions, many specifically addressing statements by lawyers. "Lawyer

advertising is a constitutionally protected form of commercial speech, but like any

other form of commercial speech, a state may regulate it to protect the public."

*Mason v. Fla. Bar*, 208 F.3d 952, 955 (11th Cir. 2000) (citing *Bates v. State Bar of*

*Ariz.,* 433 U.S. 350, 383–84 (1977)).  Courts review the constitutionality of a

state's restrictions on lawyer advertising based on the test originally adopted by the

Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service*

*Commission of N.Y.*, 447 U.S. 557, 563–66 (1980).

   "Under *Central Hudson*, the government may freely regulate commercial

speech that concerns unlawful activity or is misleading."  *Florida Bar v. Went for*

*It, Inc.*, 515 U.S. 618, 623-24 (1995).  If the commercial speech concerns lawful

activity and is not misleading, the government must meet the *Central Hudson* test.

*See id.* at 624.  Searcy Denney's proposed statements are lawful and not

misleading.  So the *Central Hudson* test applies.

   Under *Central Hudson*, a restriction on commercial speech is valid only if

(1) the asserted governmental interest in restricting the speech is substantial; (2)

the challenged restriction directly advances the asserted governmental interest; and

(3) the restriction is not more extensive than is necessary to serve that interest.

*See, e.g., Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 183

(1999); *Central Hudson*, 447 U.S. at 563-66.

"Unlike rational basis review, the *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). "Under *Central Hudson*'s second prong, the State must demonstrate that the challenged regulation advances the Government's interest in a direct and material way." *Went for It*, 515 U.S. at 625 (internal quotations omitted). "That burden, we have explained, 'is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.' " *Id.* (quoting *Edenfield*, 507 U.S. at 767). To show that a regulation materially advances a substantial interest, a state may present empirical data, studies, and anecdotal evidence. *See id.* at 628. "Courts have generally required the state to present tangible evidence that the commercial speech in question is misleading and harmful to consumers before they will find that restrictions on such speech satisfy [this] prong." *Borgner v. Brooks*, 284 F.3d 1204, 1211 (11th Cir. 2002).

"The third prong of *Central Hudson* requires that there be an adequate 'fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable.' " *Harrell v. Fla. Bar*, 608 F.3d 1241, 1270-71 (11th Cir. 2010) (quoting *Went for It*, 515 U.S. at 632). While "the

'least restrictive means' test has no role in the commercial speech context, . . . the existence of 'numerous and obvious less-burdensome alternatives to the restriction on commercial speech . . . is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable.' " *Went for It*, 515 U.S. at 632 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993)).

In our case, the Bar's position rests on two premises, neither of which withstands analysis.  First, the Bar speculates that a potential client will be misled into believing that an attorney who "specializes" or has "expertise" in an area is board certified.  But the Bar has offered no empirical or even anecdotal evidence in support of the assertion.  And if the Bar is really concerned with this possibility, there are narrower ways to attack the problem, including, for example, by educating the public on what it means to be board certified, or by requiring a disclaimer—a statement by the attorney explaining that the attorney specializes or has expertise but is not board certified.

Second, the Bar says:

> If the State were prohibited from establishing any standards as a basis for claiming specialization or expertise, lawyers would be able to self-certify and any lawyer could claim to be an expert or specialist in any field.  The State has a substantial interest in enabling consumers to determine which lawyers have special training and expertise without having to engage in a degree of research that would be so extensive as to be impracticable for the average consumer.

Def.'s Mot. Summ. J., ECF No. 35, at 6-7.

The easy answer is that nobody has proposed to prevent the Bar from establishing reasonable standards. Nobody has proposed to allow a lawyer to "self-certify" or to claim expertise without a basis for doing so. The Bar can prohibit untrue or misleading claims. But this is not what the Bar has done.

Instead, the Bar prohibits even truthful claims. Searcy Denney has expertise in mass-tort and unsafe-product cases, as well as in personal-injury cases generally. The Bar has not denied it and could not reasonably do so. But Rule 4-7.14 prohibits Searcy Denney from noting on its website that it has expertise in these areas. Indeed, the Bar prohibits every lawyer in the state from claiming expertise in mass-tort or unsafe-product cases, because there is no board certification in these narrow fields. And the Bar prohibits every law *firm* in the state from claiming expertise in personal-injury cases, because law firms, as distinguished from individual lawyers, cannot be board-certified.

It should be noted, too, that the Bar's approach is unlikely to solve the problem it posits. The Bar readily allows a lawyer to assert that the lawyer handles only cases of a specific kind. So a lawyer can say personal-injury cases are all the lawyer handles, or that personal-injury cases are the

lawyer's business.  The Bar apparently believes that a potential client will

attribute a different meaning to these assertions than to the assertion that a

lawyer specializes or has expertise in personal-injury cases.  But the Bar has

offered no empirical or even anecdotal support for the supposition.  When

First Amendment rights are at stake, such an unsupported (and indeed

unintuitive) supposition will not do.

In sum, the Bar's ban on truthful statements about a lawyer's or law

firm's specialty or expertise, at least as applied to websites, fails all three

prongs of the *Central Hudson* test.

This analysis is confirmed by *Abramson v. Gonzales*, 949 F.2d 1567 (11th

Cir. 1992).  When that case was decided, Florida licensed psychologists but did not

prohibit the practice of psychology without a license.  Even so, a Florida statute

prohibited unlicensed psychologists from advertising that they were

"psychologists."  The state's theory was that the public would wrongly assume that

a "psychologist" was licensed—much as the Bar asserts here that the public will

assume a "specialist" is board-certified.  The Eleventh Circuit held that the

advertising restriction violated the First Amendment.  The court said that in *Peel v.

Attorney Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 110 (1990),

"[a] majority of the justices rejected the 'paternalistic assumption' that the 'public

would automatically mistake a claim of specialization for a claim of formal

recognition by the State.' " *Id.* at 1576 (quoting *Peel*, 496 U.S. at 105). The Eleventh Circuit also said that the "state's own definition of a specialist—or here a psychologist—cannot bar those who truthfully hold themselves out as specialists or psychologists from doing so." *Id.* Here, as in *Abramson*, the state cannot prevent a person from advertising a lawful specialty, even if the state's own definition of the specialty is different.

VI

For these reasons,

IT IS ORDERED:

1.  The plaintiffs' summary-judgment motion, as amended, ECF Nos. 30 & 33, is granted in part and denied in part.

2.  The defendants' summary-judgment motion, ECF No. 35, is denied.

3.  The defendants John F. Harkness, Elizabeth Tarbert, James N. Watson, Jr., and Adria E. Quintela, in their official capacities as employees of the Florida Bar, are enjoined from enforcing Rules Regulating The Florida Bar, Rule 4-7.14(a)(4), to prohibit the plaintiffs from making truthful statements on a website, blog, or social medium about their specialty or expertise. This injunction binds these defendants and their officers, agents, servants, employees, and attorneys—and others in active concert or participation with any of them—who receive actual notice of this injunction by personal service or otherwise.

4.   The plaintiffs' other claims are dismissed without prejudice for lack of jurisdiction because the claims are not ripe.

5.   The clerk must enter judgment and close the file.

6.   The court retains jurisdiction to award costs and attorney's fees on a timely motion and to enforce the injunction.

SO ORDERED on September 30, 2015.

s/Robert L. Hinkle_____
United States District Judge